## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| **PETER BLEUS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) Hon. Carlos E. Mendoza |
| | ) Case No.: 6:23-cv-01763-CEM-EJK |
| **UNITED PARCEL SERVICE, INC.,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

---

*Counsel for Defendant United Parcel Service, Inc.*
Emily S. Johnson [Pro Hac Vice]
Jennifer L. Pope [Pro Hac Vice]
Kristyn L. Hardy [Pro Hac Vice]
Gary R Kessler, Esq. [FBN 232777]
MARTENSON, HASBROUCK & SIMON LLP
2573 Apple Valley Road NE
Atlanta, Georgia 30309
Tel: (404) 909-8100
Fax: (404) 909-8120
ejohnson@martensonlaw.com
khardy@martensonlaw.com

Pursuant to Fed. R. Civ. P. 56(a), Defendant United Parcel Service, Inc., ("UPS") respectfully files its Motion for Summary Judgment and submits this Memorandum of Law in Support.

## INTRODUCTION

UPS operates a highly engineered, time-sensitive network transporting millions of packages around the world every day and has spent decades perfecting its delivery procedures and maximizing efficiency, cost effectiveness, and safety. UPS competes in a constantly evolving, high pressure, and intensely competitive market against low-cost rivals.

Because UPS's package delivery drivers ("Package Car Drivers" or "Drivers") perform their job away from UPS facilities, UPS supervises them by monitoring certain operational statistics and through periodic observational rides. This takes place in a unionized work environment where the terms and conditions of the Drivers' employment are governed by a collective bargaining agreement ("CBA") between UPS and the Teamsters. The CBA requires progressive discipline, and union employees can file grievances about any alleged violation of the CBA. UPS management must therefore memorialize any performance related feedback via verbal and written disciplinary notices. This provides Drivers an opportunity to correct any behaviors brought to their attention, and if they fail to do so, they can be discharged. But any such discharge is not self-effectuating and does not happen

immediately. Once UPS issues an Intent to Discharge notice to a union employee, the CBA enables the employee to file a grievance within 10 working days and continue working while the grievance is adjudicated.

Here, Plaintiff was a Package Car Driver until December 2019. He was issued a series of performance related disciplinary notices throughout 2019, including verbal warnings, written warnings, a Suspension notice, and numerous Intent to Discharge letters. He timely filed grievances on the Suspension notice and all of the Intent to Discharge letters, and, as a result, none of the disciplinary notices went into effect. That is, until he was issued five Intent to Discharge letters in November 2019 related to an October 30 observational ride. Plaintiff did not timely file a grievance within the requisite 10 working days of being presented with these Intent to Discharge letters, so he was removed from his job. He then filed an untimely grievance, and UPS and the Union agreed to submit that grievance to the Grievance Committee, comprised of an equal number of union and company representatives.

Then, as now, Plaintiff and the Union had a multitude of excuses for Plaintiff's failure to timely file a grievance. None of these excuses persuaded the Grievance Committee, and it decided to uphold Plaintiff's discharge.

Having exhausted his attempts to save his job through the grievance process, Plaintiff has now filed a lawsuit claiming race discrimination. Understandably, Plaintiff laments the loss of his job, and he is disappointed with the Union's

representation of him. However, there is no evidence that his discharge or the outcome of the grievance process had anything to do with his race (Black). Accordingly, UPS requests the Court to dismiss Plaintiff's race discrimination claim, because Plaintiff cannot raise a triable issue of fact.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. UPS delivers packages worldwide. (ECF 72-1 at ¶ 16).

2. UPS prohibits all forms of unlawful discrimination and harassment, as reflected in its policies such as the Equal Opportunity and Fair Treatment Policy, the Code of Business Conduct, and the Professional Conduct and Anti-Harassment Policy, as well as the CBA, which are published to all employees on UPS's employee portal. (ECF 72-2, p. 139); (ECF 72-1 at ¶ 10).

3. UPS provides reporting mechanisms for employees to report objectionable conduct, which Plaintiff repeatedly utilized during his employment and UPS addressed. (ECF 72-4, pp. 29:15-23, 44:14-18, 48:17-20, 61:19-25, 62:17-22, 69:3-5, 70:4-7, 90:15-17); (ECF 72-1 at ¶ 10); (ECF 72-7, pp. 45:8-25, 51:17-24, 59:23-25).

4. UPS provides regular anti-discrimination training for its management employees. (ECF 72-5, p. 81:8-11); (ECF 72-6, p. 69:16-25); (ECF 72-7, p. 29:15-24); (ECF 72-16, p. 80:5-6); (ECF 72-1 at ¶ 11); (ECF 72-8 at ¶ 7); (ECF 72-17 at ¶ 8).

5.     UPS's operations depend on high standards of productivity, performance, service, and safety, and UPS is known for its detailed systems and methods to monitor and resolve operational issues. UPS uses an "exception-based reporting" approach. When service failures or inefficiencies occur, management investigates root causes and finds solutions. (ECF 72-6, p. 37:15-25).

6.     Drivers perform their job duties on routes, away from the package centers, so UPS management must monitor their performance and efficiency through analysis of delivery statistics and periodic observational rides with the Drivers, known as On-the-Job-Supervision or "OJS" rides. OJS rides aim to evaluate Drivers' delivery methods, address inefficiencies or safety issues, and provide feedback and coaching. (ECF 72-6, p. 52:1-11); (ECF 72-5, pp. 29:20-24, 26:21-25, 27:4-8, 28:12-15, 29:1-3, 23-24, 40:8-12, 42:16-25, 43:1-6); (ECF 72-1 at ¶ 18).

9.     UPS's Dispatchers assign a "planned day" to each Driver consisting of, for example, miles driven and number of packages delivered and picked up, to balance the workload among Drivers and maximize efficiency. If a Driver's actual time exceeds the planned hours without justification, it is flagged as a problem and referred to as "overallowed." (ECF 72-1 at ¶¶ 22-23); (ECF 72-6, pp. 40:18-25, 41:4-15); (ECF 72-8 at ¶¶ 10-11).

10.     Plaintiff's management reviewed operational reports daily and developed action plans regarding Driver effectiveness and efficiency. Drivers

identified as underperforming were subject to action plans, including additional OJS rides.  (ECF 72-6, pp. 34:3-14, 17-25, 35:20-21, 37:7-11, 45:11-25); (ECF 72-5, pp. 37:19-25, 38:1-9, 19-23, 25, 39:1-4, 40:8-12, 43:14-25, 45:16-22, 47:1-21, 52:7-19, 23-25, 53:6-15).

11.    When OJS rides revealed improper delivery methods, managers coached Drivers to align with UPS's standards. If a Driver failed to immediately correct their behavior after receiving coaching and direction, disciplinary action could follow. (ECF 72-5, pp. 26:21-25, 27:4-8, 40:8-12, 45:103); (ECF 72-1 at ¶ 25).

12.    UPS and the Teamsters Union have negotiated a National Master United Parcel Service Agreement and a regional Supplemental Agreement (collectively, the "CBA"), which governs all terms and conditions of employment for union employees like Plaintiff. (ECF 72-4, p. 29:6, 10); (ECF 72-2); (ECF 72-3); (ECF 72-17 at ¶ 5).

13.    Under the CBA, for most infractions, UPS must administer progressive discipline under the "just cause" requirement before discharging an employee. The CBA merely requires one written warning for an infraction before a notice of Intent to Discharge can be issued, but progressive discipline can consist of verbal warnings,

warning letters, and Suspension notices. (ECF 72-3, pp. 234-35); (ECF 72-9, p. 49:13-17); (ECF 72-1 at ¶ 29); (ECF 72-17 at ¶ 10).[1]

14.    There is only one exception to the CBA's progressive discipline requirement: "cardinal infractions," for which a union employee can be terminated immediately, without progressive discipline. Cardinal infractions include dishonesty, being under the influence of alcohol or drugs while on duty, carrying illegal drugs, recklessness resulting in a serious accident, failure to report an accident, carrying unauthorized passengers, and unprovoked violence. (ECF 72-3, pp. 234-35); (ECF 72-17 at ¶ 11).

15.    The Union advocates for union employees through the CBA's multi-step grievance-arbitration process. Union employees can file grievances to address "any controversy, complaint, misunderstanding, or dispute arising as to the interpretation, application, or observance of any of the provisions of the [CBA]" and challenge disciplinary actions, or raise other concerns they have regarding their employment at UPS. (ECF 72-4, p. 29:15-20); (ECF 72-3, pp. 231-32); (ECF 72-17 at ¶ 12).

---

[1] Although Plaintiff references an *unauthenticated* document titled "Final Employee Handbook" in the Complaint (ECF 1, Ex. B), UPS does not utilize that document as an official or governing policy for operations in the United States or within Plaintiff's operating unit. (ECF 72-1 at ¶ 42). UPS's disciplinary practices for union employees in Florida are governed by the applicable CBA, not by any separate handbook. (*Id.*)

16.    When a grievance is filed, it is first heard in a local hearing. If it is not resolved, it then goes to the Southern Region Area Parcel Grievance Committee panel ("SRAPGC" or "Grievance Committee"), which is composed of an equal number of UPS and Teamster representatives. If the SRAPGC hearing results in a tied vote by the Grievance Committee, then the grievance goes to the National Deadlock Panel. (ECF 72-4, p. 30:1-5); (ECF 72-2, p. 20); (ECF 72-3, pp. 233-34); (ECF 72-17 at ¶ 13).

17.    Under the CBA, an Intent to Discharge letter is not self-effectuating. Unless discharged for a cardinal infraction, a union employee subject to an Intent to Discharge may continue working during the grievance-arbitration process. (ECF 72-17 at ¶ 4).

18.    To challenge an Intent to Discharge, a union employee must file a grievance within 10 working days. If no timely grievance is filed, then UPS must effectuate the discharge within 10 days thereafter, or else the discipline is null and void. UPS has effectuated discharges against other employees who failed to timely grieve discharge notices. (ECF 72-4, p. 108:1-4); (ECF 72-3, p. 235); (ECF 72-9, pp. 30:8-9, 20-22, 35:7-11, 43:5-7); (ECF 72-10, p. 46:2-8); (ECF 72-17 at ¶ 15).

19.    At the time of his discharge, Plaintiff worked as a Driver at UPS's Colonial Center in Longwood, Florida, where he was responsible for delivering

7

packages on a designated route and was represented by Teamsters Local 385. (ECF 72-4, pp. 27:9-14, 35:2); (ECF 72-17 at ¶ 17).

20.    At the time of his discharge, Plaintiff reported directly to On-Road Supervisor Raul Estevez, who supervised Plaintiff's day-to-day employment. Estevez reported directly to Center Manager Janyra Arrufat, and she reported to Division Manager Julius "Trip" Gwin. Gwin had responsibility over several package centers besides Colonial, and he did not manage Plaintiff's day-to-day employment. (ECF 72-1 at ¶¶ 7-8); (ECF 72-6, pp. 13:1-4, 8:24-25, 88:1-2, 110:15-22).

21.    Disciplinary notices were prepared electronically by supervisors, reviewed by UPS's labor relations staff, and finalized with Arrufat's electronic signature before issuance to an employee. (ECF 72-5, pp. 13:9-23, 14:3-16, 18:7-11); (ECF 72-1 at ¶ 32); (ECF 72-8 at ¶ 20).

22.    Plaintiff's file contains numerous performance related disciplinary notices issued to Plaintiff in 2019:

(a.)    April 3, 2019 - verbal warning for failure to follow methods on April 2
(b.)    April 26, 2019 - verbal warning for methods violations on April 26
(c.)    June 26, 2019 - verbal warning for failure to follow work rules on June 20 and separate verbal warning for work rules violations that occurred on June 21
(d.)    June 28, 2019 - warning letter dated June 27, 2019 for failure to follow instructions on June 20 and a separate warning letter for unprofessional conduct that occurred on June 21
(e.)    July 3, 2019 - verbal warning for missed service on July 2
(f.)    July 12, 2019 - warning letter dated July 11, 2019, for failure to follow methods during a July 10 training ride

(g.)   July 18, 2019 - (1) Suspension letter for failing to follow methods
during a July 11 training ride, (2) Letter of Record dated July 16
summarizing retraining from the July 10–11 rides, and (3) Intent to
Discharge letter dated July 16 for improper methods and unsafe
practices during a July 12 ride

(h.)   August 7, 2019 - verbal warning for failure to follow safe work methods
on August 6, 2019

(i.)   August 14, 2019 - two Intent to Discharge letters dated August 13, 2019
– one for failure to use proper safe work methods and another for failure
to follow pickup and delivery methods during an August 6 ride

(j.)   August 22, 2019 - verbal warning for failure to follow work methods
on August 21

(k.)   October 22, 2019 - verbal warning for failure to follow work methods
on October 15 and verbal warning for failure to follow safe work
methods during an October 16 ride

(l.)   October 24, 2019 - verbal warning for a safety infraction that occurred
on October 23

The file also contains grievances filed by Plaintiff pertaining to his disciplinary

notices. (ECF 72-4, pp. 44:14-18, 45:14-25, 46:1-25, 47:1-10, 57:20-25, 58:1-18,

59:25, 60:1-25, 61:1-6, 63:2-4, 64:15-25, 65:1-14, 72:18-25, 73:1-16; 72-11); (ECF

72-1 at ¶¶ 34, 36, Ex. A).

23.   Plaintiff refused to sign the disciplinary forms, but the Union Steward

signed and dated the documents, consistent with the standard practice when an

employee refuses to sign a disciplinary notice. (ECF 72-4, pp. 41:25, 42:1, 47:24,

51:24, 61:9-13, 65:15-17, 73:23-25, 131:2-19); (ECF 72-9, p. 17:7-13); (ECF 72-8

at ¶ 16).

9

24.     Plaintiff grieved the Suspension and Intent to Discharge notices, and no job action was taken against him relating to these disciplinary notices. (ECF 72-4, pp. 48:13-15, 49:7-11); (ECF 72-3, p. 235); (ECF 72-1 at ¶ 38).

25.     On October 30, 2019, Estevez conducted an OJS ride with Plaintiff. After the ride, Plaintiff went on vacation, and Estevez did not review the ride with him until he returned. (ECF 72-8 at ¶ 16).

26.     UPS issued five Intent to Discharge letters dated November 18, 2019 for failure to follow proper work methods and unprofessional conduct during the October 30 OJS ride. (ECF 72-4, pp. 74:9-13, 75:17-25); (ECF 72-12); (ECF 72-13); (ECF 72-1 at ¶¶ 35-36, Ex. A); (ECF 72-8 at ¶¶ 14-17, 19).

27.     When drafting the November 18 Intent to Discharge letters, Estevez used a pre-filled template and inserted the date of the infraction, the type of infraction, and Plaintiff's name and address. Notwithstanding the language in the body of the letter, the heading at the top and the subject lines expressly identified the letters as an "Intent to Discharge," which language is sometimes used in such letters; and, Plaintiff referred to the letters as such in his untimely grievances. (ECF 1, Ex. E); (ECF 72-9, pp. 32:3-5, 35:12-15, 18-20, 25, 36:2-3); (ECF 72-8 at ¶¶ 18, 20).

28.     On November 26, 2019, following Plaintiff's vacation, Estevez met with Plaintiff and Union Steward Sean Mason ("Mason") for UPS's presentation of these five Intent to Discharge letters. (ECF 72-4, p.131:1-19); (ECF 72-8 at ¶ 21).

29.     During the meeting, Plaintiff asserted that the discipline was untimely. Estevez pointed to the office calendar and counted back 10 days to demonstrate that the discipline complied with company policy and the CBA. Estevez confirmed with the Union Steward present that he understood the discipline was timely before the Steward signed the discipline on Plaintiff's behalf. (ECF 72-8 at ¶ 22).

30.     The Intent to Discharge letters that Plaintiff attached as Exhibit E to his Complaint include the same signature block showing they were signed and issued by UPS management, and signed and dated by the Union Steward on Plaintiff's behalf, consistent with UPS's internal records. (ECF 1, Ex. E); (ECF 72-8 at ¶ 22).

31.     To challenge these Intent to Discharge letters, Plaintiff had to file a grievance within 10 working days of the November 26 presentation of the discipline. He did not do so. (ECF 72-4, p. 108:1-4); (ECF 72-3, p. 235); (ECF 72-9, p. 35:4-15); (ECF 72-8 at ¶¶ 24-26).

32.     After the 10-day deadline expired without a grievance being filed, UPS effectuated Plaintiff's discharge, consistent with the CBA and standard practice. (ECF 72-4, p. 89:11-19); (ECF 72-9, pp. 30:20-22, 35:4-11, 43:2-7); (ECF 72-17 at ¶ 20); (ECF 72-8 at ¶ 27).

33.     Plaintiff filed untimely grievances on December 10 and December 13, 2019, after the discharge had already been effectuated. (ECF 72-4, pp. 88:19-25, 89:1-10); (ECF 72-14); (ECF 72-8 at ¶¶ 26, 28).

34.    A local hearing was held, and UPS and the Union agreed to refer the untimely grievance to the SRAPGC grievance panel. (ECF 72-17 at ¶ 21).

35.    UPS raised a point of order at the SRPGC grievance hearing objecting that Plaintiff's grievance was untimely under the CBA. (ECF 72-17 at ¶ 22).

36.    At the SRAPGC grievance hearing, the Union argued that the Intent to Discharge letters had not been presented on November 26 but rather on November 27, 2019 and therefore Plaintiff's grievance was timely. (ECF 72-4, pp. 91:14-25, 92:1-4); (ECF 72-17 at ¶ 23).

37.    The Grievance Committee heard the evidence presented and upheld Plaintiff's discharge. (ECF 72-4, pp. 91:14-25, 92:1-4); (ECF 72-17 at ¶ 25).

38.    The Union, not UPS, determined whether the Union Steward would testify at the SRAPGC grievance hearing. (ECF 72-10, p. 48:1-3); (ECF 72-17 at ¶ 30).

39.    Plaintiff knew of the 10-day deadline; he filed timely grievances on prior discipline; he previously served as an acting Union Steward and knew how the process worked; and he had prior success with the grievance process, including reinstatement in a 2017 discharge. (ECF 72-4, pp. 29:15-23, 48:13-15, 49:7-11, 60:23-25, 61:1-2, 70:4-7, 73:12-16, 108:1-4, 126:2-13, 207:9-13); (ECF 72-9, p. 48:11-14).

40.    At the same SRAPGC hearing at which Plaintiff's grievance was heard, the Grievance Committee upheld the discharge of a white employee, Aaron Ormsby, who also failed to grieve an Intent to Discharge letter by the required 10-day deadline. UPS took the same position and raised a point of order on the untimeliness of Ormsby's grievance, and the same Grievance Committee upheld Ormsby's discharge on that ground. (ECF 72-17 at ¶¶ 26-27).

41.    Plaintiff does not believe that the Union did a good job supporting him in the grievance process because he is Black. (ECF 72-4, pp. 30:6-11, 120:23-25, 121:1-12, 127:11-16, 131:2-19).

42.    Plaintiff does not have personal knowledge of the work history of other Drivers, including white Drivers. (ECF 72-4, pp. 42:20-24, 62:8-12).

43.    Gwin directed discipline of non-white and white Drivers, including Union Steward Sean Mason (white), on at least three separate occasions. (ECF 72-10, pp. 13:20-25, 15:14-17, 16:7-9, 32:22-24); (ECF 72-6, pp. 104:18-20, 112:1-4).

44.    Gwin was not involved in Plaintiff's discharge until Plaintiff failed to timely grieve the Intent to Discharge letters. (ECF 72-6, p. 111:22-25).

45.    On May 1, 2015, Plaintiff entered into a settlement agreement with UPS in which he released all claims against UPS prior to May 1, 2015. (ECF 72-4, pp. 140:16-25, 141:1-25, 142:1-21); (ECF 72-15).

46.    Plaintiff's state law and retaliation claims were previously dismissed by this Court. (ECF 40). The sole remaining claim before this Court is race discrimination under Title VII in Count II of Plaintiff's Complaint.

## STANDARD OF REVIEW

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 338 n. 4 (1986) (*quoting* Fed. R. Civ. P. 56(c)). The nonmovant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247, 249-50 (1986). When the evidence supporting the non-moving party is merely colorable and not significantly probative, summary judgment is warranted. *Id*.

## ARGUMENT & CITATION TO AUTHORITY

Plaintiff fails to establish any triable issue of fact regarding his race discrimination claim, and summary judgment should be granted in UPS's favor.

## I.    Any Claims Asserted By Plaintiff That May Have Arisen Prior to May 1, 2015 Must Be Dismissed as Released by a Prior Settlement Agreement.

Any of Plaintiff's claims relating to alleged conduct prior to May 1, 2015 are barred by the release of claims that Plaintiff knowingly and voluntarily executed as part of a prior settlement agreement. (SMF at ¶ 45). Under both federal and state

law, "settlements are highly favored and will be enforced whenever possible." *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985); *see Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1279 (11th Cir. 2004). Accordingly, Plaintiff's pre-May 1, 2015 claims fail as a matter of law. *See Pettinelli v. Danzig*, 722 F.2d 706, 707-10 (11th Cir. 1984) (affirming summary judgment where plaintiffs "contractually waived any right to complain of events prior to" executing a "written 'Agreement and Release.'").

## II.   Summary Judgment Should Be Granted On Plaintiff's Race Discrimination Claims, Because He Fails to Raise a Triable Issue of Fact.

Summary judgment is proper, because Plaintiff cannot establish a *prima facie* case, much less overcome UPS's legitimate, non-discriminatory reasons for its decision with a showing of pretext.

### a.   Plaintiff Cannot Establish a Prima Facie Case of Race Discrimination.

To establish a *prima facie* claim of race discrimination in the absence of direct evidence of discrimination—which does not exist in this case—Plaintiff must show: (1) he is a member of a protected class, (2) he was qualified for his position and performing satisfactorily, (3) he suffered an adverse employment action, and (4) he was treated less favorably than a similarly situated employee outside of his protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If Plaintiff establishes a prima facie case, then the burden shifts to UPS to provide a legitimate,

nondiscriminatory reason for its actions. *Lewis v. City of Union City*, 918 F.3d 1213, 1221 (11th Cir. 2019). If UPS articulates such a reason, Plaintiff must then show that UPS's stated reason was merely a pretext for unlawful discrimination. *Id.*

### i. Plaintiff Did Not Meet UPS's Legitimate, Performance Expectations.

Plaintiff cannot show that he was meeting UPS's legitimate performance expectations. "An individual is 'qualified' for a position, for purposes of employment discrimination law, if he meets the criteria that the employer has specified for the position." *Wright v. Southland Corp.,* 187 F.3d 1287, 1301 n. 16 (11th Cir. 1999). Plaintiff asserts that he was qualified for his position because he performed satisfactorily as a Driver for seven years based on his own perception of his performance. (ECF 1 at ¶ 81); (ECF 72-4, pp. 45:10-13, 69:11-17). "However, plaintiff's subjective belief that he was qualified based upon criteria different from those specified by defendant is not sufficient to create a genuine issue of material fact on the issue of qualification." *Huddleston v. Sunshine Mills, Inc.,* 965 F. Supp. 2d 1298, 1313 (N.D. Ala. 2013) (citing *Austin v. Progressive RSC, Inc.,* 265 F. App'x 836, 845 (11th Cir. 2008)) ("[T]he only evidence presented by [the plaintiff] to demonstrate [qualification] consisted of his own opinion, which is insufficient without more.").

In this case, the undisputed record shows that Plaintiff was not meeting UPS's legitimate performance expectations, as evidenced by Plaintiff's repeated

performance deficiencies in 2019, which were documented in multiple OJS rides, retraining efforts, and progressive discipline, and culminated in the November 2019 Intent to Discharge letters. (SMF at ¶¶ 22, 26-30). Courts are not permitted to "second-guess a[n employer's] business decision" where the plaintiff has failed to satisfy workplace standards. *Rojas v. Florida*, 285 F.3d 1339, 1344 (11th Cir. 2002). As such, Plaintiff cannot establish this prong of a *prima facie* case.

### ii. Plaintiff Cannot Identify Similarly Situated Comparators Who Were Treated More Favorably.

Plaintiff also cannot satisfy the fourth element of his *prima facie* case—that UPS treated similarly situated non-Black employees more favorably. A valid comparator must be "similarly situated in all material respects." *Lewis*, 918 F.3d at 1226-27. This means the comparator must have: (1) engaged in the same misconduct, (2) been subject to the same employment policies, (3) reported to the same decision-maker, and (4) had a similar disciplinary history. *Id.* at 1227–28.

Plaintiff's discharge rested on two undisputed, interrelated factors: first, he was issued an Intent to Discharge notice; second, he failed to timely grieve the discharge notice. (SMF at ¶¶ 26, 31-32). For a comparator to be truly comparable to Plaintiff, both factors must be present. *Earle v. Birmingham Bd. of Educ.*, 843 F. App'x 164, 166 (11th Cir. 2021) ("[A] similarly situated comparator will ordinarily…[(1)] have been subject to the same employment policy, guideline, or rule as the plaintiff…[2] and share the plaintiff's employment history."). Any

employee who received an Intent to Discharge notice and filed a *timely* grievance is not similarly situated to Plaintiff, because under the CBA, timely grievances are adjudicated on the merits, are subject to different rules under the CBA, and might not result in an effectuation of the discharge notice, which is precisely what happened with Plaintiff's earlier discipline. (SMF at ¶¶ 13, 14, 22, 24). *See Abram v. Von Maur, Inc.*, 719 F. App'x 929, 932 (11th Cir. 2018) (rejecting comparator evidence where the alleged comparator was evaluated under different criteria). Likewise, any employee terminated for a cardinal infraction under the CBA is not a valid comparator, because those infractions bypass progressive discipline entirely and are governed by a different CBA rule. (SMF at ¶¶ 14, 17). *Abram*, 719 F. App'x at 932.

Therefore, to show more favorable treatment, Plaintiff must identify a non-Black employee who, like him, was issued an Intent to Discharge, failed to timely grieve it, and yet was retained by the same decision-makers. *Knox v. Roper Pump Co.*, 957 F.3d 1237, 1248 (11th Cir. 2020) ("[D]ifferences in treatment by different … decision makers can seldom be the basis for a viable claim of discrimination."). Discrimination means "treating like cases differently"; treating different cases differently is not discriminatory. *Lewis*, 918 F.3d at 1222-23. Plaintiff cannot point to any non-Black employee who was issued an Intent to Discharge, failed to timely grieve it, and was retained by the same decisionmakers. In fact, the undisputed

evidence shows that a white employee, Aaron Ormsby, was discharged after failing
to timely grieve an Intent to Discharge, and the same Grievance Committee upheld
Ormsby's discharge under the same CBA rule. (SMF at ¶ 40). Because Plaintiff can
point to no valid comparator sufficient to "permit a valid inference that invidious
discrimination is afoot," his *prima facie* case fails. *Lewis*, 918 F.3d at 1229.

### b. UPS's Decisions Respecting Plaintiff's Employment Were Based on Legitimate, Non-Discriminatory Reasons.

Even if Plaintiff could establish a *prima facie* case of race discrimination –
which he cannot – UPS need only articulate a legitimate, non-discriminatory reason
for UPS's action to rebut Plaintiff's *prima facie* case. *McDonnell Douglas*, 411 U.S.
at 802. This burden is "exceedingly light" as the employer must merely proffer
legitimate reasons, not prove them. *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013,
1019 (11th Cir. 1994).

Here, UPS's non-discriminatory reason is based on two interrelated factors:
(1) the conduct that resulted in issuance of the Intent to Discharge letters; and (2)
Plaintiff's failure to timely file a grievance, which made the Intent to Discharge
effective under the CBA. (SMF at ¶¶ 17, 25-26, 31-32). First, the undisputed
performance record of Plaintiff, consisting of numerous performance-related
progressive discipline notices, culminated in Intent to Discharge notices. (SMF at ¶¶
22, 26-31). Further, the Intent to Discharge letters were not self-executing; under the
CBA, Plaintiff had to file a grievance within 10 working days to challenge the

19

discipline. (SMF at ¶¶ 31-32). He failed to do so, triggering the standard process for effectuation of discharge. (*Id.*). When Plaintiff later filed an untimely grievance, the Grievance Committee – composed of an equal number of UPS and Union representatives – upheld the discharge on procedural grounds. (SMF at ¶ 37). This legitimate, non-discriminatory reason for Plaintiff's discharge fully satisfies UPS's burden and defeats any presumption created by Plaintiff's *prima facie* allegations.

### c.    Plaintiff Cannot Raise a Genuine Issue of Material Fact Regarding Whether UPS's Stated Reasons for His Discharge are Pretextual.

The burden therefore shifts back to Plaintiff to show that UPS's explanation is merely a pretext for unlawful discrimination, which he cannot do. *Lewis,* 918 F.3d at 1221. This burden "merges with the ultimate burden of persuading the court that [he] has been the victim of intentional discrimination." *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). "[H]e may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* However, "[s]howing only that the employer's proffered reason is false does not necessarily entitle a plaintiff to get past summary judgment." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010).

Plaintiff cannot show pretext by claiming that UPS deviated from its standard progressive discipline policy. Under the CBA, issuance of an Intent to Discharge for non-cardinal infractions requires at least one written warning within the preceding

nine months, and often includes verbal warnings, written warnings, and suspensions.
(SMF at ¶ 13). Here, UPS did exactly that: Plaintiff received multiple verbal and
written warnings and a Suspension notice before being issued the November 2019
Intent to Discharge letters. (SMF at ¶¶ 22, 26). Similarly, Plaintiff cannot claim
pretext based on how UPS handled his grievance. If Plaintiff believed the Intent to
Discharge was improper, he knew he had to file a grievance within 10 working days.
(SMF at ¶ 39). He failed to do so. (SMF at ¶ 31). Despite this, UPS and the Union
allowed his untimely grievance to be heard by the SRPGC, which decided to uphold
the discharge. (SMF at ¶¶ 34, 37). Nothing in this record shows any deviation from
standard practice.

Nor can Plaintiff show that UPS's stated reason for his discharge was false or
unworthy of credence. Pretext requires more than just second-guessing or
disagreement; it requires evidence that the stated reason is a lie covering unlawful
discrimination. *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir.
2012) (quoting *Tex. Dep't of Cmty. Affairs*, 450 U.S. at 256); *see also Chapman v.
AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (plaintiff may not "recast an
employer's reason or substitute his judgment for that of the employer"). The relevant
question here is whether UPS believed Plaintiff's conduct supported the subject
discipline, not whether Plaintiff agreed with it. *Wilson v. B/E Aerospace, Inc.*, 376
F.3d 1079, 1092 (11th Cir. 2004). Plaintiff's conclusory statements that he was a

"good driver" or that he disagreed with the discipline are not enough to raise a
genuine issue of material fact on pretext. *See Holifield v. Reno*, 115 F.3d 1555, 1564
n.6 (11th Cir. 1997) (conclusory allegations without supporting facts do not create
an inference of discrimination). Plaintiff cannot show that UPS's reasons for
discharging him are implausible, let alone false. This is true for both the issuance
and the effectuation of the Intent to Discharge based on Plaintiff's failure to timely
file a grievance.

Likewise, his suggestion that UPS manipulated the process and/or deliberately
confused him about the content and timing of the Intent to Discharge is speculative
and unsupported, particularly considering the undisputed evidence that: (i) Plaintiff
knew of the 10-day deadline for *any* grievance and had consistently met it before for
his own grievances and as an acting union steward; (ii) the Intent to Discharge letters,
attached as Exhibit E to Plaintiff's Complaint, were explicitly identified as "Intent
to Discharge" (and Plaintiff understood that term to mean that UPS intended to
discharge his employment) and were signed and presented to Plaintiff, and the Union
Steward signed and dated them per standard practice; (iii) when Plaintiff filed the
untimely grievances respecting these notices, he specifically referred to them in his
grievances as "Intent to Discharge"; (iv) the Union, not UPS, controlled whether the
union steward testified at the grievance hearing; and (v) the Grievance Committee
heard all evidence presented by the Union and upheld the discharge. (SMF at ¶¶ 22,

27-30, 39). Plaintiff cannot raise an inference of pretext by attacking the plausibility of UPS's stated reasons for its actions well after the fact, because courts cannot "sit as a super-personnel department that reexamine[] an entity's business decisions." *Conner v. Lafarge N. Am., Inc.*, 343 F. App'x 537, 542 (11th Cir. 2009).

Plaintiff cannot show pretext through alleged comparators, either. As demonstrated above, the only valid comparator – Ormsby, a white driver – was treated the same as, not more favorably than, Plaintiff. (SMF at ¶ 40). Moreover, Plaintiff cannot show that UPS disciplined or discharged Black employees more than similarly-situated non-Black employees such that a jury could conclude that UPS disciplined and discharged Plaintiff because of his race. (SMF at ¶ 43). The undisputed facts destroy any inference that Plaintiff's discharge was racially motivated.

Finally, even if there were a showing of pretext, it would not, by itself, defeat summary judgment, because Plaintiff cannot offer a "convincing mosaic" of evidence from which an inference of discriminatory intent might be drawn, let alone sufficient evidence for a reasonable jury to conclude that race was the true reason for his discharge.[2] *See Lewis v. City of Union City,* 934 F.3d 1169, 1189 (11th Cir.

---

[2] Plaintiff cannot rely on the double-hearsay testimony from Sean Mason to support an inference of race discrimination by UPS for two reasons. First, Mason's statement that someone told him that Trip Gwin allegedly used the "n-word" is inadmissible hearsay within hearsay: he repeats what an unidentified third party supposedly said, and no hearsay exception applies at either level. *See, e.g., Macuba v. Deboer,* 193 F.3d 1316, 1325 (11th Cir. 1999). Second, alleged stray remarks such as this, not directed at Plaintiff and completely unconnected to the challenged employment

2019); *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir.
2015). Plaintiff's conclusory assertion that non-Black drivers were not scrutinized
as closely or disciplined as harshly are insufficient, especially when he admits to
lacking personal knowledge of their work histories, which is undisputedly crucial in
the CBA's progressive discipline framework. (SMF at ¶¶ 13, 42). As the Eleventh
Circuit has repeatedly emphasized, "Title VII functions only as a bulwark against
unlawful discrimination; it does not substitute the business judgment of federal
courts for any other nondiscriminatory reason." *Flowers*, 803 F.3d at 1330.
Employers are free to discharge employees "for a good reason, a bad reason, a reason
based on erroneous facts, or for no reason at all, as long as its action is not for a
discriminatory reason." *Id.* at 1338. Because Plaintiff cannot point to any evidence
raising a triable issue of fact, his race discrimination claim fails as a matter of law
and should be dismissed.

## III.    Plaintiff's Claim for Punitive Damages Fails as a Matter of Law.

Under Title VII, punitive damages are available only where the employer
acted "with malice or with reckless indifference to the federally protected rights of
an aggrieved individual." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 529-30 (1999).

---

decisions, do not show discriminatory intent. *See, e.g., Standifer v. Sonic-Williams Motors, Inc.*,
401 F. Supp. 2d 1205, 1215-16 (N.D. Ala. 2005) (declining to recognize
stray remarks unconnected to the decisionmaking process as circumstantial evidence of
discrimination).

This standard requires more than proof of discrimination; it requires evidence that the employer knew it was violating the law. *See id.* at 535–36 ("The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination."). Plaintiff offers no such evidence. To the contrary, the undisputed evidence shows that UPS maintains comprehensive anti-discrimination policies, which are published to all employees. (SMF at ¶ 2). These policies expressly prohibit discrimination and provide multiple channels for employees to report concerns. (SMF at ¶¶ 2-3).

Plaintiff was fully aware of these protections and used them repeatedly during his employment. (SMF at ¶ 3). Notably, the only time he failed to preserve his rights under the CBA was when he did not timely file a grievance to contest his final Intent to Discharge letter, and that procedural failure, not any discriminatory animus, resulted in his discharge being upheld. (SMF at ¶¶ 3, 24, 37, 39). These undisputed facts directly negate any inference of malice or reckless disregard, and Plaintiff's claim for punitive damages fails as a matter of law.

## CONCLUSION

For all the foregoing reasons, UPS respectfully requests the Court to grant summary judgment in its favor on Plaintiff's only remaining claim – race discrimination under Title VII – and dismiss this action in its entirety with prejudice, as well as award such further relief as the Court deems just and proper.

Respectfully submitted,


*/s/Kristyn L. Hardy*
Emily S. Johnson [Pro Hac Vice]
Jennifer L. Pope [Pro Hac Vice]
Kristyn L. Hardy [Pro Hac Vice]
**MARTENSON, HASBROUCK & SIMON LLP**
2573 Apple Valley Road NE
Atlanta, Georgia 30309
Tel: (404) 909-8100
Fax: (404) 909-8120
ejohnson@martensonlaw.com
jpope@martensonlaw.com
khardy@martensonlaw.com

and

Gary R Kessler, Esq. [FBN 232777]
**GARY R. KESSLER PC**
2573 Apple Valley Road NE
Atlanta, Georgia 30319
(404) 909-8124
gkessler@martensonlaw.com

*Counsel for Defendant United Parcel Service, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that she has electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system and all parties have been

served via CM/ECF's efiling notification system.

*/s/Kristyn L. Hardy*
Kristyn L. Hardy
